[Civ. No. 17321.   First Dist., Div. Two.   July 22, 1957.]

PAULA SMITH, Appellant, v. THE BOARD OF ADMIN-
ISTRATION OF THE STATE EMPLOYEES' RE-
TIREMENT SYSTEM, Respondent; PATRICIA
SOUDEN, as Guardian, etc., Intervener and Respondent.

Alfred C. Skaife and F. Nason O'Hara for Appellant.

Edmund G. Brown, Attorney General, and Charles A. Barrett, Deputy Attorney General, for Respondents.

O'DONNELL, J. pro tem.*—This is an appeal from a judgment denying a writ of mandate against the Board of Administration of the State Employees' Retirement System (hereinafter called the Board).

Frank T. Smith was employed by the California Highway Patrol as a traffic officer from March 1, 1942, to October 23, 1953. On the latter date, he died of a heart attack. He left surviving him his wife Paula, the appellant herein, and a minor child of a previous marriage, Patricia, the respondent herein. Decedent and appellant had married on August 31, 1953, less than two months prior to his death.

It appears that decedent's duties as a traffic officer involved considerable physical exertion. For instance, for several years he was engaged in checking overloaded trucks. This required him to lift in and out of his car portable scales weighing 105 pounds. Also, from time to time he was called upon to work on serious accidents. Again, he was required on several occasions to drag rivers for the bodies of drowned persons which involved considerable physical effort. On August 30, 1953, the day before his marriage to appellant, he was engaged in the exceptionally strenuous task of lifting the victims of an automobile accident up a very steep incline. This activity left decedent exhausted.

After his marriage to appellant, decedent's activities were generally routine. Three weeks before his death, he took a

---

*Assigned by Chairman of Judicial Council.

vacation, during which he did nothing of a strenuous nature. Three days before his death, he complained of feeling ill. His doctor was summoned. He confined decedent to his bed where he remained until his death. Decedent was 35 years of age at the time of his death.

Appellant filed an application with the Board for special death benefits. Respondent filed a similar application. Rights to death benefits are governed by the State Employees' Retirement Law (Gov. Code, §§ 20000-21500). Section 21363 provides for the payment of a special death benefit "if the deceased was a patrol, . . . member, if his death was industrial, as determined by the Industrial Accident Commission, using the same procedure as in workmen's compensation hearings, and if there is a wife or child who qualifies under subdivision (b), Section 21364. Section 3212.5 of the Labor Code provides that in the case of a member of the State Highway Patrol the term "injury" as used in the Workmen's Compensation Act (Lab. Code, div. 4) includes "heart trouble . . . which develops or manifests itself during a period while such member . . . is in the service of the . . . State Highway Patrol . . ." The section further provides that where such member has served in that capacity for at least five years a disputable presumption arises that such "heart trouble" arose out of and in the course of his employment.

Hearings were held before the Industrial Accident Commission (hereinafter called the Commission) at which testimony was received of decedent's activities while a member of the Patrol. Medical reports and medical testimony were also produced. Dr. Rose, in her written report, dated July 12, 1954, and in her oral testimony, attributed death to atherosclerosis, which she described as a progressive, degenerative process. In her opinion, decedent's employment had no relation to his heart condition or subsequent death. Dr. Abrams gave the cause of death as acute myocardial infarction, which he attributed to the stresses and strains of decedent's employment. He opined that decedent's heart condition resulted from his employment.

Upon completion of the hearings, the Commission found as follows: "Frank T. Smith, while employed as a traffic officer by the California Highway Patrol from March 1, 1942 to and including October 23, 1953, sustained injury to his heart arising out of and in the course of his employment, proximately resulting in his death on October 23, 1953." The proceeding was thereupon referred back to the Board.

Section 20124 of the Government Code provides that, "The board shall determine who are employees and is the sole judge of the conditions under which persons may be admitted to and continue to receive benefits under this system." Section 21364, subdivision (b), of the same code provides that the special death benefits are "payable to the surviving wife to whom he was married prior to sustaining the injury or disease resulting in death"; otherwise they are payable to his children under 18 years of age. The Commission having determined that the death was industrial, there was thus left for determination by the Board the sole issue of whether the injury or disease which resulted in decedent's death occurred before or after his marriage to appellant.

At the hearing before the Board, the matter was submitted on the record of the proceedings before the Commission. The Board also had before it, and admittedly considered as evidence, a letter dated December 27, 1954, written by Dr. Rose to the State Employees' Retirement System, the body of which reads as follows:

"This is in reply to your inquiry of December 22, 1954 relative to the death of the late Frank T. Smith.

"Coronary heart disease is a chronic progressive condition and was incurred long before his marriage on August 31, 1953. As the death has been judged industrial and his term of employment was more than eleven (11) years, involvement of the coronary arteries by the sclerotic process occurred years before his last marriage."

This letter was not brought to the attention of appellant's counsel until after the hearing before the Board.

The Board found that decedent's heart injury occurred prior to his marriage to appellant and ordered payment to be made to respondent of all benefits accruing under section 21364. Appellant thereupon instituted this mandamus proceeding. The matter was submitted to the lower court on the transcript of the proceedings before the Board. The trial court found that the Board had proceeded in all respects as required by law, that it did not commit any abuse of its discretion, that the Board's findings are based on the weight of the evidence and on substantial evidence, that Dr. Rose's letter of December 27, 1954 was merely cumulative of her earlier report and testimony and was not prejudicial to appellant's claim. The court thereupon denied the writ of mandate.

■ On this appeal, the first contention advanced by appellant is that there is no evidence to sustain the finding that decedent's injury was sustained prior to his marriage to appellant. This contention is without merit. Dr. Rose, in her report dated July 12, 1954, said: "As brought out in the autopsy, coronary sclerosis was present. This is a chronic progressive degenerative process and was not related to or precipitated by his occupation." And in her testimony at the hearing before the Commission she described decedent's condition as "a normal aging process." Dr. Abrams, although giving a different diagnosis of decedent's heart condition stated that the initial heart "insult" might have occurred anytime from two weeks to one year prior to the fatal attack. It is true that neither doctor ventured to fix the precise date on which heart trouble first affected decedent. However, their testimony, coupled with the lay testimony concerning decedent's activities, not only warrants, but well nigh demands, the conclusion that the onset of decedent's heart condition occurred well before the date of the marriage. The evidence amply supports the findings on this point.

■ Appellant argues that the injury and disease referred to in section 21364 should be considered as having been sustained only when it became manifest, and that in the instant case decedent's condition became manifest only three days before his death. Appellant refers to sections 5411 and 5412 of the Labor Code. Section 5411 reads: "The date of injury, except in cases of occupational disease, is that date during the employment on which occurred the alleged incident or exposure for the consequences of which compensation is claimed." Section 5412 reads: "The date of injury in cases of occupational diseases is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that said disability was caused by his present or prior employment." These sections are part of the Workmen's Compensation Act. They are contained in the chapter of the Labor Code (div. 2, pt. 4, ch. 4) entitled, "Limitation of Proceedings." Their purpose, obviously, is to fix a time certain for commencement of the limitation period within which proceedings for the recovery of workmen's compensation must be brought. They do not purport to define substantive rights. Moreover, under the provisions of Government Code, section 21363, *supra*, the Workmen's Compensation Act is called into play for the limited purpose of determining whether or not a given injury

or disease is industrial, that is, whether it arose out of, and in the course of, employment. No other provisions of that act are adopted by the Retirement Law. Finally, Government Code, section 21364, *supra*, in plain terms fixes the critical date for determining who is entitled to special benefits as the date of "sustaining" the injury or disease.

■ Appellant's final contention is that the Board's consideration of Dr. Rose's report of December 27, 1954 deprived her of due process of law because appellant was not served with a copy of the report prior to the hearing before the Board. However, as the trial court found, that report was merely cumulative of her previous testimony and her previous written report. In each instance, Dr. Rose attributed death to atherosclerosis, which she described as a progressive, degenerative process.

The judgment is affirmed.

Dooling, Acting P. J., and Draper, J., concurred.

A petition for a rehearing was denied August 21, 1957, and appellant's petition for a hearing by the Supreme Court was denied September 18, 1957.