[Civ. No. 41337. Second Dist., Div. Two. May 31, 1973.]

CHARLES HANNA, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
CITY OF SANTA BARBARA et al., Respondents.

**COUNSEL**

Ghitterman, Eskin & Herreras and Allan S. Ghitterman for Petitioner.

T. Groezinger, James J. Vonk, George S. Bjornsen, P. M. Miyamoto and W. R. Lowndes for Respondents.

**OPINION**

**FLEMING, J.**—Petitioner was employed as a peace officer from 1946 to 1962. He suffered a heart attack on 23 June 1971 and filed his claim for workmen's compensation benefits within one year of his heart attack. Relevant is Labor Code section 3212.5, which declares that heart trouble developing or manifesting itself during a period of employment as a peace officer is presumed to arise out of and occur in the course of the employment. The referee found, and his finding has not been challenged, that the presumption controls here, i.e., that petitioner's heart disease arose

out of and occurred in the course of his employment. The nine-year lapse between employment and heart attack therefore presented no bar to recovery.

The controverted issue is whether the claim was timely filed or whether it was barred by the statute of limitations as not having been made within one year of the date of injury. (Lab. Code, § 5405.) The referee concluded the claim was untimely, and the Workmen's Compensation Appeals Board upheld the referee's conclusion.

Those passing on the cause have reached different conclusions as to the date of petitioner's injury for the purpose of calculating the one-year period of limitation. The referee concluded the date of injury was 1965, because that was the time of petitioner's first disability. The Board concluded the date of injury was 1969, because that was the time of petitioner's first disability from heart disease. Petitioner argues the date of injury was 1971, because that was the time of his first diagnosed heart attack.

### Petitioner's Medical History

Petitioner retired from police work in 1962 because of a back injury. In November 1965 he consulted Dr. Freidell complaining of constriction of the chest area associated with some skipped heart beats. Dr. Freidell found petitioner quite tense and thought he was in fear of a heart attack. There were no positive physical findings. Results of an electrocardiogram, taken mainly to reassure the patient, were within normal limits. Dr. Freidell saw petitioner again in September 1966 for substernal tingling associated with dizziness and perspiration. Another electrocardiogram fell within normal limits, and the doctor concluded petitioner did not have myocardial ischemia.

On 22 May 1969 petitioner entered Cottage Hospital complaining of a sense of premature contractions of the heart, a series of extra beats associated with a slight retrosternal and transthoracic chest tightness followed by sweating, marked apprehension, and restlessness. According to hospital records an electrocardiogram given petitioner on the date of his admittance fell within normal limits. On 23 May an electrocardiogram again fell within normal limits, but it was suggestive of inferior myocardial ischemia. On 24 May petitioner had an abnormal electrocardiogram suggestive of ischemia and possible old myocardial scar. The tracing was considered equivocal. An electrocardiogram on 26 May showed no change since 23 May. Because of the abnormal electrocardiograms, a resting and triple Master's exercise tolerance test was performed on 28 May. The test adduced no evidence of myocardial ischemia. Petitioner left Cottage Hospital on 28 May 1969 with a discharge diagnosis of labile blood pressure,

cause not determined, moderate anxiety reaction with chest wall syndrome; exogenous obesity, moderate; diverticulosis, coli; past history of cervical and lumbosacral disease with a radicular compression; and recurrent indigestion, secondary to the moderate anxiety reaction.

Following petitioner's heart attack in June 1971 Dr. Frank opined that he had "been experiencing progressive sclerosis of his coronary arteries for perhaps thirty years" and that "the emotional stress to which he was subjected in the course of his employment as a law enforcement officer and private investigator materially aggravated and accelerated the process of sclerosis within his coronary arteries making him more susceptible to the complications of this condition."

Petitioner testified at a hearing in August 1972 that he first realized he had a disabling heart disease when he was told on 23 June 1971 that he had suffered a massive heart attack. His testimony is substantiated by the medical evidence, which shows that any fears he may have had prior to June 1971 about the condition of his heart had been dispelled by his doctors. Neither in 1965 nor in 1969 had petitioner's ailment been diagnosed as heart disease and on neither occasion was he informed he had heart disease. It is also uncontroverted that petitioner's first diagnosed heart attack occurred in 1971. Nevertheless, the Board, finding that plaintiff's 1969 disability was attributable to his heart condition, concluded that this disability established the date of injury as 1969 for the purpose of filing a claim.

### What Is the Date of Injury?

The one-year period for filing a claim for workmen's compensation begins to run on the date of injury. (Lab. Code, § 5405, subd. (c).) Normally, the date of injury is the date on which the incident for which compensation is sought occurred. (Lab. Code, § 5411.) In cases of cumulative injury the date of injury is the date of disability caused thereby. (Lab. Code, § 3208.1.) But in cases of occupational disease the date of injury is the date on which the employee first suffered disability therefrom *and* knew, or in the exercise of reasonable diligence should have known, that the disability was caused by his prior employment. (Lab. Code, § 5412.)[1]

Respondents first point out that petitioner's disability was cumulative in that various employment stresses during the period of his service cumu-

---

[1]Section 5412: "The date of injury in cases of occupational diseases is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that said disability was caused by his present or prior employment."

lated their effects to produce disability on 22 May 1969. They then argue that in cumulative injury cases the employee's knowledge of the cause of his disability is no longer determinative of the date of injury because of the adoption in 1968 of Labor Code section 3208.1, which declares that "the date of cumulative injury shall be the date of disability caused thereby."[2]

■ Since the injury to petitioner's heart developed over a period of 30 years, unquestionably petitioner suffered a cumulative injury. (Lab. Code, § 3208.1.) But his injury was more than cumulative; it was also occupational. (See *Chavez* v. *Workmen's Comp. Appeals Bd.,* 31 Cal. App.3d 5 [106 Cal.Rptr. 853].) Petitioner's heart trouble developed during the period of his employment as a peace officer, heart disease in peace officers has been declared presumptively occupational (Lab. Code, § 3212.5), i.e., incurred in an occupation productive of an uncommon amount of the disease or in which the disease routinely constitutes a special hazard or in which the disease is commonly regarded as a concomitant of the employment (*Johnson* v. *Industrial Acc. Com.,* 157 Cal.App.2d 838 [321 P.2d 856]), and the referee found in this case that the statutory presumption applied.

It is evident that the provisions of the Labor Code are ambiguous in their application to the facts of petitioner's case. When petitioner's injury is viewed in its cumulative aspect the date of injury depends on disability (§ 3208.1), but viewed in its occupational aspect the date of injury depends on petitioner's knowledge of the causation of his disability (§ 5412). With respect to heart disease in peace officers we think its statutory character as an occupational injury (§ 3212.5) preponderates, even though the injury is one that is cumulative and not specific. It follows that heart disease in peace officers falls under section 5412 and that the date of injury is the date of the employee's disability with knowledge of its causation.

At bench, neither petitioner nor his doctors knew of his heart disease until he suffered his heart attack on 23 June 1971. This, therefore, was the date of injury, and the statute of limitations did not start to run at any earlier time.

---

[2]Section 3208.1: "An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment; provided, however, that the date of cumulative injury shall be the date of disability caused thereby."

The order of the Board is reversed, and the cause is remanded for further proceedings.

Roth, P. J., and Compton, J., concurred.

The petition of respondents State Compensation Insurance Fund and Department of Highway Patrol for a hearing by the Supreme Court was denied July 25, 1973.