[No. F018353. Fifth Dist. June 1, 1993.]

WESTERN GROWERS INSURANCE COMPANY, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD, BOYD WAYNE AUSTIN et al., Respondents.

228

**COUNSEL**

Dressler & Quesenbery and Michael R. Wadsworth for Petitioner.

Mullen & Filippi, Bruce K. Wade and Joseph Pluta for Respondents.

**OPINION**

**THAXTER, J.**—Respondent Boyd Wayne Austin was employed by respondent Kirschenman Enterprises for approximately 25 years until March 17, 1987, when he became disabled. Austin suffered from major recurrent depression. Petitioner Western Growers Insurance Company (Western) and respondent Industrial Indemnity (Industrial) were the workers' compensation carriers for Kirschenman Enterprises during the relevant periods. After leaving his employment, Austin filed several claims for workers' compensation benefits (case Nos. 87 BAK 38774, 87 BAK 38775, 87 BAK 38776,

BAK 104158). The cases were consolidated for consideration and heard by the workers' compensation judge (WCJ).

On May 1, 1992, the WCJ issued her findings and award in all four cases. The WCJ concluded in case Nos. 38776 and 104158 that Austin had sustained a cumulative trauma for the entire period of employment and awarded permanent disability against Western pursuant to Labor Code section 5500.5.[1] The WCJ also awarded two periods of temporary disability. The first, the period of Austin's initial hospitalization in 1985, was charged to Industrial and the second, the period after March 1987, was charged to Western. In case Nos. 38774 and 38775 Austin received no award.

Western filed with the Workers' Compensation Appeals Board (WCAB) a petition for reconsideration pursuant to section 5900. Industrial also filed a petition for reconsideration. After consideration of the record and the WCJ's report, the WCAB granted the petitions for the sole purpose of modifying the award to add an 11th finding of fact that Industrial had failed to prove that Austin had been given notice of his right to benefits and thus was estopped from raising a statute of limitations defense. In all other respects, the WCAB affirmed and adopted as its own the WCJ's findings and award.

We granted Western's petition for writ of review. In this court, Western contends the WCAB's decision merged two periods of disability, contrary to the provisions of section 3208.2, and incorrectly applied section 5500.5 by holding the last carrier, Western, responsible for disability caused by one continuous, cumulative injury which first occurred during Industrial's period of coverage. We agree with the latter contention and will annul the WCAB's decision and remand for further proceedings. We reject a further claim by both Western and Industrial that the WCAB erroneously failed to apportion a percentage of Austin's disability to nonindustrial aggravating factors.

## FACTS

Austin began working for Kirschenman Enterprises in 1962 as a farm laborer. Over the years, he was assigned increasing responsibilities and was ultimately promoted to superintendent in December 1984. In 1985, Austin began experiencing symptoms later diagnosed as major depression. He was nervous, confused, could not make decisions, and suffered memory loss. On June 19, 1985, Austin was admitted to Kern View Community Mental Health Center and Hospital for evaluation and treatment. His treating physician was Dr. R.K. Shah. Austin was hospitalized from June 10 to July 26, 1985.

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

After his release from Kern View, Austin returned to work and resumed his duties as superintendent, although he remained under doctor's care and on medication. However, Austin had not fully recovered from his depression and his return to work precipitated the return of his symptoms. Austin's condition worsened. By March 1987, he could no longer perform the functions of his job and he obtained a work release from Dr. Shah. In 1988, Austin was again hospitalized for depression. His condition became permanent and stable on February 8, 1991.

All physicians consulted in the course of litigation, as well as Austin's treating physicians, agree that he suffers from major recurrent depression. The agreed medical examiner (AME), Dr. James H. Wells, reported that although there was some vague reference to earlier (pre-1985) bouts with depression, "there is no indication that depression would have occurred at this time or in this degree in the absence of the work experience described." Austin was unable to handle the increased technological demands of his work as the ranch grew and his job responsibilities increased. Dr. Wells also reported "the stress of the work environment as perceived and experienced by Mr. Austin, especially during the year immediately prior to the 1985 hospitalization served as a significant proximate cause and aggravating factor in the precipitation of the Major Depression with melancholia. Even though there was improvement there was never complete resolution of that episode so that the stress prior to 1985 played a significant role in the development of further destabilization of psychological defenses and the re-emergence of a full blown Major Depression . . . ."

## DISCUSSION

### I. *Standard of Review*

█ In considering a petition for writ of review of a decision of the WCAB, this court's authority is limited. This court must determine whether the evidence, when viewed in light of the entire record, supports the award of the WCAB. This court may not reweigh the evidence or decide disputed questions of fact. (§ 5952; *Universal City Studios, Inc.* v. *Worker's Comp. Appeals Bd.* (1979) 99 Cal.App.3d 647, 655-656 [160 Cal.Rptr. 597].) However, this court is not bound to accept the WCAB's factual findings if determined to be unreasonable, illogical, improbable or inequitable when viewed in light of the overall statutory scheme. (*Bracken* v. *Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 254 [262 Cal.Rptr. 537].) Questions of statutory interpretation are, of course, for this court to decide. (*Pestmaster Services, Inc.* v. *Structural Pest Control Bd.* (1991) 227 Cal.App.3d 903, 909

[278 Cal.Rptr. 281]; *Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].)

II. *The Evidence Supports a Finding That Austin Suffered From One Cumulative Injury*

██ Under the workers' compensation statute, there are two distinct types of industrial "injuries." A compensable injury can be either "specific" or "cumulative." (§ 3208.1.) A cumulative injury is one which results from repetitive events, occurring during each day's work, which in combination cause any disability or need for medical treatment. (*Fireman's Fund Indem. Co.* v. *Ind. Acc. Com.* (1952) 39 Cal.2d 831, 833 [250 P.2d 148].) A worker suffering from a cumulative injury may invoke the rights and benefits provided under California's workers' compensation laws when the cumulative effects of the repetitive events result in a compensable injury, i.e., one resulting in lost wages or the need for medical treatment. (See *Van Voorhis* v. *Workmen's Comp. Appeals Bd.* (1974) 37 Cal.App.3d 81, 86-87 [112 Cal.Rptr. 208]; *Hanna* v. *Workmen's Comp. Appeals Bd.* (1973) 32 Cal.App.3d 719, 722 [108 Cal.Rptr. 227].)

In any given situation, there can be more than one injury, either specific or cumulative or a combination of both, arising from the same event or from separate events. (*Chevron U.S.A., Inc.* v. *Workers' Comp. Appeals Bd.* (1990) 219 Cal.App.3d 1265, 1271 [268 Cal.Rptr. 699]; *City of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1978) 88 Cal.App.3d 19, 29 [151 Cal.Rptr. 679]; *State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd.* (1969) 1 Cal.App.3d 812, 819 [82 Cal.Rptr. 102].) The number and nature of the injuries .suffered are questions of fact for the WCJ or the WCAB. (*Aetna Cas. & Surety Co.* v. *Workmen's Comp. Appeals Bd.* (1973) 35 Cal.App.3d 329, 341 [110 Cal.Rptr. 780]; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) For example, if an employee becomes disabled, is off work and then returns to work only to again become disabled, there is a question of fact as to whether the new disability is due to the old injury or whether it is due to a new and separate injury. (See *Assurance Corp.* v. *Industrial Acc. Com.* (1922) 57 Cal.App. 257, 259-260 [207 P. 60]; *Huston* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856 [157 Cal.Rptr. 355].) In addition, one exposure may result in two distinct injuries, posing another question of fact. (*Chevron U.S.A., Inc.* v. *Workers' Comp. Appeals Bd., supra,* 219 Cal.App.3d at p. 1271.) If a worker not only suffers a nervous breakdown but also develops an ulcer as a result of work-related stress, there would be two distinct injuries from one exposure. The nature and the number of injuries suffered are determined by the

events leading to the injury, the medical history of the claimant, and the medical testimony received.

■ Both the WCJ and the WCAB found Austin suffered from a single cumulative injury. This finding is supported by substantial evidence and binds this court on review. (*LeVesque* v. *Workmen's Comp. App. Bd.*, *supra*, 1 Cal.3d at p. 637.) Dr. Wells opined even though Austin may have had a proclivity for depression prior to 1985, there was no evidence depression would have occurred absent the stress he suffered at work. Dr. Wells also reported that Austin never recovered from the depressive episode in 1985 and that he became progressively worse upon returning to work. It was the same stress that resulted in Austin's initial hospitalization in 1985 that further exacerbated the problem after he returned to work. Dr. Wells said the depressive episode that began in 1985 was never completely resolved. Austin remained under a doctor's care and on medication from 1985 onward. The WCAB's finding is also supported by Dr. Shah's discharge report and Austin's testimony. Austin may have improved for a short time after hospitalization, but he never recovered and his symptoms reappeared shortly after he returned to work, becoming progressively worse.

III. *Austin's Injuries Were Not Impermissibly Merged*

■ Western contends the finding that Austin suffered from a single cumulative injury impermissibly merges two periods of continuous trauma. Western also argues the WCJ's finding that there were two periods of temporary disability is inconsistent with a finding that there was one cumulative injury.

■ The workers' compensation statute provides indemnity for both temporary and permanent disabilities. A temporary disability is impairment reasonably expected to be cured or materially improved with proper medical care. (*Chavira* v. *Workers' Comp. Appeals Bd.* (1991) 235 Cal.App.3d 463, 473 [286 Cal.Rptr. 600].) A disability, other than one resulting from a progressive occupational disease, is permanent when the employee's condition has reached maximum improvement or the condition has become stationary for a reasonable period of time. (*Ibid.*) A disability cannot be both permanent and temporary at the same time. (*New Amsterdam Cas. Co.* v. *Ind. Acc. Com.* (1951) 108 Cal.App.2d 502, 507 [238 P.2d 1046].) When a disability changes from temporary to permanent, the permanent disability is considered a new and further disability. (*Ibid.*)

Temporary disability benefits are intended primarily to replace lost earnings. Permanent disability benefits are to compensate both for actual incapacity to work and for the physical impairment suffered. (*Chavira* v. *Workers' Comp. Appeals Bd.*, *supra*, 235 Cal.App.3d at p. 473.) When there are

two discrete periods of temporary disability, they are not merged into a single disability but are treated as separate entitlements to benefits. (1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation (rev. 2d ed. 1991) Temporary Disability Benefits, § 7.05, pp. 7-27 through 7-28.)

Whether a disability is permanent or temporary is a question of fact. (1 Hanna, *op. cit. supra*, § 7.01[2], pp. 7-5 through 7-6.)

■ Western argues the antimerger doctrine found in section 3208.2 requires a finding that there were at least two continuous cumulative injuries, not one. This is important in determining who bears responsibility for Austin's benefits, Western or Industrial. Section 3208.2 provides as follows: "When disability, need for medical treatment, or death results from the combined effects of two or more injuries, either specific, cumulative, or both, all questions of fact and law shall be separately determined with respect to each such injury, including, but not limited to, the apportionment between such injuries of liability for disability benefits, the cost of medical treatment, and any death benefit."

Section 3208.2 applies to the combination of *injuries*, not periods of disability. Under section 3208.1, an injury causing a need for medical treatment is compensable even in the absence of disability. In this case Austin had a compensable injury from 1985 onward. Although he had two periods of disability, i.e., the inability to work, those two periods of disability were connected by a continuous need for medical treatment all caused by a single work-related cumulative injury, stress-induced depression. There was thus no time between 1985 and the present that Austin did not have a compensable injury.

■ The legislative intent of section 3208.2 was to nullify court decisions allowing the merger of past specific injuries into a cumulative injury. The court cases giving rise to the antimerger statute address, for the most part, past specific injuries to a worker which were merged into a later cumulative injury thus allowing recovery of benefits otherwise barred by the statute of limitations. The specific injuries were usually separated by periods when no compensable injury existed. When such injuries were merged into a later cumulative injury, insurance carriers who had already compensated the worker for the benefits due for the specific injuries were charged with a share of the disability benefits later due as a result of the cumulative injury. (See *Chavez* v. *Workmen's Comp. Appeals Bd.* (1973) 31 Cal.App.3d 5, 7-10 [106 Cal.Rptr. 853]; *State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd.*, *supra*, 1 Cal.App.3d 812, 817-818.) Merging defeated the purposes of the

statute of limitations and left insurance carriers and employers open to risk for lengthy periods of time.

 Western, in support of its position, relies on *Aetna Cas. & Surety Co. v. Workmen's Comp. Appeals Bd., supra*, 35 Cal.App.3d 329. In *Aetna*, the WCAB found that two specific incidents causing injury to the employee's back were part of a continuous trauma to the back and thus the injury could be classified as cumulative. However, because the record revealed two distinct periods of disability separated by periods *without compensable injury* and two specific incidents which gave rise to compensable injury, the antimerger doctrine precluded treating the two specific incidents as a single cumulative injury. The court found a finding of two distinct periods of disability and need for medical treatment was inconsistent with the finding of a single cumulative injury and annulled the award. (*Aetna Cas. & Surety Co. v. Workmen's Comp. Appeals Bd., supra*, 35 Cal.App.3d at pp. 342-343.)

*Aetna* is distinguishable from this case. Here Austin had only one continuous compensable injury. Unlike *Aetna*, Austin's two periods of temporary disability were linked by the continued need for medical treatment. The two periods of temporary disability were not "distinct" as was the case in *Aetna*, nor were they instigated by separate specific incidents.

The record supports the WCAB's findings. There was a single cumulative injury, despite separate periods of temporary disability. There was no impermissible merger.

IV. *Section 5500.5 Was Incorrectly Applied*

 Western contends the WCJ and WCAB incorrectly applied section 5500.5. The section reads in part as follows: "(a) Except as otherwise provided in Section 5500.6, liability for occupational disease or cumulative injury claims filed or asserted on or after January 1, 1978, shall be limited to those employers who employed the employee during a period of four years immediately preceding either the date of injury, as determined pursuant to Section 5412, or the last date on which the employee was employed in an occupation exposing him or her to the hazards of the occupational disease or cumulative injury, whichever occurs first. Commencing January 1, 1979, and thereafter on the first day of January for each of the next two years, the liability period for occupational disease or cumulative injury shall be decreased by one year so that liability is limited in the following manner:

"For claims filed or The period shall be:
asserted on or after:

"January 1, 1979 . . . . . . . . . . . . . three years
"January 1, 1980 . . . . . . . . . . . . . two years
"January 1, 1981 and thereafter . . . . . one year

"In the event that none of the employers during the above referenced periods of occupational disease or cumulative injury are insured for workers' compensation coverage or an approved alternative thereof, liability shall be imposed upon the last year of employment exposing the employee to the hazards of the occupational disease or cumulative injury for which an employer is insured for workers' compensation coverage or an approved alternative thereof.

"Any employer held liable for workers' compensation benefits as a result of another employer's failure to secure the payment of compensation as required by this division shall be entitled to reimbursement from the employers who were unlawfully uninsured during the last year of the employee's employment, and shall be subrogated to the rights granted to the employee against the unlawfully uninsured employers under the provisions of Article 1 (commencing with Section 3700) of Chapter 4 of Part 1 of Division 4.

"If, based upon all the evidence presented, the appeals board or workers' compensation judge finds the existence of cumulative injury or occupational disease, liability for the cumulative injury or occupational disease shall not be apportioned to prior or subsequent years; however, in determining the liability, evidence of disability due to specific injury, disability due to nonindustrial causes, or disability previously compensated for by way of a findings and award or order approving compromise and release, or a voluntary payment of disability, may be admissible for purposes of apportionment."

Pursuant to section 5412,[2] the date of a cumulative injury is the date the employee *first* suffers a "disability" and has reason to know the disability is work related. (*Hanna* v. *Workmen's Comp. Appeals Bd.*, *supra*, 32 Cal.App.3d at p. 722.) Austin first suffered disability in June 1985 when he

---

[2]"The date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment." (§ 5412.)

was hospitalized. Austin's testimony establishes that in 1985 he believed his problems were work related.[3]

The WCJ relied on *California Casualty Indem. Exchange* v. *Workers' Comp. Appeals Bd. (Murphy)* (1991) 56 Cal.Comp.Cases 508, a case assigning liability pursuant to section 5500.5, as controlling.

In *Murphy* there was a cumulative injury which occurred during coverage provided by California Casualty and prior periods of disability for which another insurer provided benefits. Murphy worked in the kitchen of the St. Francis Yacht Club and as a result of his work duties developed a dermatological condition of the hands that required medical treatment and resulted in periods of temporary disability over a period of years. The WCAB upheld the WCJ's finding that a single cumulative injury resulted in 1979 and concluded that under section 5500.5, California Casualty was solely liable for the entire injury. The WCAB did not merge the earlier prior periods of disability, apparently because it found them distinct.

The facts are not fully reported in *Murphy* since writ review was denied, and the report appearing in the digest fails to state why liability was imposed on the later carrier. It appears from what is reported that the antimerger doctrine of section 3208.1 required a finding of more than one injury, the last being cumulative and beginning within the coverage period of California Casualty. Therefore, under sections 5412 and 5500.5, California Casualty was liable for the entire cumulative injury beginning within its coverage period and ending in permanent disability even though some of the causation of that injury could be attributed to earlier periods of disability. Assuming the previous periods of disability were distinct and separate, the statute was correctly applied because the date of the cumulative injury was the first date of disability for *that* injury.

However, the same result is not permitted here. In this case there is but one continuous cumulative injury; under section 5500.5, liability for the entire injury is imposed upon the carrier who provided coverage during the year immediately preceding the *date of injury* or the *date of last exposure, whichever occurs first*. In *Murphy*, California Casualty was liable for the benefits owed regardless of which date controlled. In this case, Industrial is the carrier of liability because the "date of injury" occurred when Austin was first hospitalized in 1985, during Industrial's coverage period. This is the first occurring date under the statute, not the date of last exposure which fell during Western's coverage period.

---

[3]There is no statute of limitations problem presented in this case because the WCAB's findings on the statute of limitations issue are not challenged on appeal.

Section 5500.5 was enacted in 1951 to codify the judicially created rule allowing an employee suffering from a progressive occupational disease to obtain an award against any one of the employers or carriers during the employment history. Under the rule, those successive employers or carriers would seek apportionment from each other. (*Flesher* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 322, 327 [152 Cal.Rptr. 459, 590 P.2d 35].) The statute was substantially amended in 1973. (Stats. 1973, ch. 1024, § 4, p. 2032.) As amended, the statute included cumulative injuries, limited the employers against whom compensation could be sought to those who had employed the injured worker during a preceding five-year period, and sharply curtailed the right to apportionment. (*Ibid.*)

In 1977, section 5500.5 was again amended. The liability period was reduced, in one-year increments, from the five-year period to a one-year period by 1981. (Stats. 1977, ch. 360, § 1, p. 1334.) In addition, all right of apportionment "to prior or subsequent years" was eliminated, together with an exception which had permitted contribution among insurers under limited circumstances. (*Ibid.*; see *City of Los Angeles* v. *Workers' Comp. Appeals Bd.*, *supra*, 88 Cal.App.3d at p. 25; *Review of Selected 1977 California Legislation* (1978) 9 Pacific L.J. 687-691.)

The various amendments were favored by the insurance industry, which reasoned that "the total burdens and benefits upon employers and insurers would more or less even out, for while they might be required to assume a larger liability in some cases, they would also be absolved of liability in other cases." (*Flesher* v. *Workers' Comp. Appeals Bd.*, *supra*, 23 Cal.3d at p. 328.)

As noted, the crucial date under section 5500.5 is either the date of injury as defined by section 5412, or the last date of exposure, whichever occurs first. In this case, the date of injury is June 1985. The last date of exposure was March 7, 1987. Thus, under the express language of section 5500.5, Industrial, who was the carrier in June 1985 and the immediately preceding year, bears full liability for the benefits owed Austin.

■ The Legislature is presumed to have meant what it said and the plain meaning of the language governs. (*Great Lakes Properties, Inc.* v. *City of El Segundo*, *supra*, 19 Cal.3d at p. 155.) When the words are clear, there is no room for interpretation. (*Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 607 [224 Cal.Rptr. 631, 715 P.2d 590].)

■ Industrial seizes on the following language in section 5500.5, subdivision (a): ". . . [I]n determining the liability, evidence of disability

. . . previously compensated for by way of a findings and award or order approving compromise and release, or a voluntary payment of disability, may be admissible for purposes of apportionment." Industrial makes a rather convoluted argument that because it had not "previously" compensated Austin for the 1985 period of disability, and because it did not provide coverage during the one-year period before the final industrial exposure, no part of the liability for the 1987 and subsequent disabilities could be apportioned to it.

We are not persuaded. Whatever application the provision relied upon may have in other factual situations, it does not nullify the express statutory language fixing liability for a single cumulative injury, as was found here, on those who employed the applicant during the earlier one-year period immediately preceding the date of injury.

The WCAB's decision incorrectly applies section 5500.5 and for that reason must be annulled.

V. *Consideration of the AME Report*

█ Western and Industrial both argue the WCAB should have given greater deference to the AME's apportionment of disability to the pre-1985 bouts of depression and Austin's purported proclivity to depression. According to Western, it is common practice to assign a percentage of present disability to a preexisting condition and apportion that percentage from the award made. (See *Franklin* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224, 231 [145 Cal.Rptr. 22].)

Here the WCJ considered the AME's report carefully. In her report and recommendation to the WCAB on the petition for reconsideration, she noted that the doctor's conclusion that there was no indication depression would have developed in the absence of the work experience was inconsistent with his apportionment to a "pre-existing pattern of recurrent depression." In her award and in her report and recommendation on the petition for reconsideration, the WCJ states clearly she rejected the insurers' claim that Austin's depression may have been caused in part by family problems. Western and Industrial have cited no authority requiring the WCJ, the WCAB or this court to accept the AME's recommended apportionment of liability. Liability is a legal question determined with reference to the statutory scheme, not a medical question.

The report of the AME was carefully considered in light of the entire record. Nothing more was required.

## DISPOSITION

The WCAB's decision after reconsideration is annulled, and the matter is remanded for further proceedings consistent with this opinion.

Martin, Acting P. J., and Vartabedian, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 19, 1993.