[No. B028877. Second Dist., Div. One. Jan. 24, 1989.]

CANTERBURY TERMITE CONTROL, INC., Plaintiff and Appellant, v.
STRUCTURAL PEST CONTROL BOARD, Defendant and Respondent.

424

COUNSEL

Hill, Farrer & Burrill and August W. Caimi for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Anne L. Mendoza, Deputy Attorney General, for Defendant and Respondent.

OPINION

**DEVICH, J.**—Canterbury Termite Control, Inc. (Canterbury), appeals from the judgment entered following denial of its petition for a writ of mandate against the California Structural Pest Control Board (Board). We hold that Board's decision imposing discipline upon Canterbury was based, in part, upon an incorrect interpretation of law and remand the matter for further proceedings.

### BACKGROUND

The facts are not in dispute. Canterbury is licensed to provide services to control, inter alia, household pests.[1] In 1984, unlicensed personnel

---

[1] California's structural pest control laws are set forth in Business and Professions Code sections 8500 to 8676. (Unless otherwise stated, all further statutory references are to the Bus. & Prof. Code.)

employed by Canterbury spoke by telephone with potential customers who had identified household pests on their properties. The telephone personnel arranged for Canterbury to provide pest control services. Licensed applicators subsequently performed the pest control work. No inspection was made of the customers' premises prior to either the negotiation of the agreements to provide services or the actual performance of the pest control work.

An accusation filed by Board on April 16, 1985, alleged that Canterbury violated structural pest control laws at various times in 1984 by allowing unlicensed personnel to quote prices for control of branch 2 pests on properties subsequently serviced by licensed applicators although there had been no prior inspection of the premises.

On May 15, 1986, an administrative law judge filed a proposed decision finding that (1) no laws were violated by Canterbury's use of unlicensed personnel to quote prices and (2) no prior inspection was required for pest control work involving branch 2 pests.

In a decision dated February 19, 1987, Board declined to adopt the administrative law judge's proposed decision (see Gov. Code, § 11517, subd. (b)), and instead determined that Canterbury's practices violated structural pest control laws.[2] Discipline was imposed upon Canterbury, including a license revocation which was stayed for three years subject to various conditions.

On April 14, 1987, Canterbury filed a petition for a writ of mandate in the superior court seeking to overturn Board's decision. Following a hearing, the petition was denied on June 30, 1987. This appeal followed.

---

Structural pest control is classified into three branches: fumigation (branch 1); general (household) pests (branch 2); and termites and other wood destroying pests or organisms (branch 3). (§ 8560, subd. (a).) " 'Household pests' are . . . those pests other than wood destroying pests . . . which invade households and other structures, including, but not limited to, rodents, vermin and insects." (§ 8505.) Pest control licenses are issued only for the branch or branches in which the applicant has qualified by examination. (§ 8560, subd. (a).) Canterbury is apparently licensed to provide services in all three branches of structural pest control.

[2]Specifically, Board found that "[Canterbury] allowed secretaries, branch 3 field representatives, and applicators to quote prices for treatment of pests, as identified by potential customers, and said customers' properties were subsequently serviced by an applicator when no licensed branch 2 field representative or operator had made an inspection of the properties. . . . [¶] [Canterbury] aided and abetted unlicensed persons to evade the structural pest control law in that no licensed branch 2 field representative or operator made an inspection on properties which had no confirmation of pests as identified by customers and which had a secretary or applicator or branch 3 field representative quote a price for the treatment of said customer identified pests and which were subsequently serviced by an applicator."

## CONTENTIONS

Canterbury contends that applicable structural pest control laws do not prohibit (1) unlicensed persons from negotiating or securing contracts for the control of household pests without a prior inspection of the property or (2) licensed applicators from performing household pest control work without a prior inspection of the property.

## DISCUSSION

■ As the facts are not in dispute and the issues on appeal are limited to the proper application of statutory law, the sole task of this court is to determine whether that law was correctly applied below. (*California School Employees Assn.* v. *Compton Unified School Dist.* (1985) 165 Cal.App.3d 694, 699 [211 Cal.Rptr. 653]; *Alba* v. *Los Angeles Unified School Dist.* (1983) 140 Cal.App.3d 997, 1005 [189 Cal.Rptr. 897].)

■ In construing the applicable provisions of California's structural pest control laws,[3] we are bound by the doctrine that "our first task . . . is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. ■ In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. ■ The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] ■ Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] ■ Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.] ■ A statute should be construed whenever possible so as to preserve its constitutionality. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

---

[3] Several of the structural pest control statutes have been amended since Canterbury's alleged 1984 violations. (Stats. 1985, ch. 1348; Stats. 1986, ch. 1266.) Although Canterbury would be entitled to the benefit of any ameliorative amendments prior to finality of Board's decision (cf. *Weisbuch* v. *Board of Medical Examiners* (1974) 41 Cal.App.3d 924, 929 [116 Cal.Rptr. 479]), the recent statutory amendments are not relevant to the issues in this case. For the sake of consistency and convenience, the statutes referred to in this opinion are the ones presently in effect.

## 1. *Contracts Negotiated or Secured by Unlicensed Persons*

Section 8505 defines structural pest control as "the engaging in, offering to engage in, . . . soliciting, or the performance of . . . identification of infestations or infections; the making of an inspection for the purpose of identifying or attempting to identify infestations or infections of household or other structures by such pests or organisms; the making of inspection reports, recommendations, estimates, and bids, whether oral or written, with respect to such infestations or infections; and the making of contracts, or the submitting of bids for, or the performance of any work including . . . the use of insecticides, pesticides, rodenticides [and] fumigants . . . for the purpose of eliminating, exterminating, controlling or preventing infestations or infections of such pests, or organisms."

Section 8550, subdivision (a), provides: "It is unlawful for any individual to engage or offer to engage in the business of, act in the capacity of, or advertise himself or herself as, or assume to act as, an operator or a field representative, or to engage or offer to engage in the practice of structural pest control, unless he or she is licensed under this chapter."

Although "[t]here is no general exemption in the [structural pest control laws] for all employees of a licensed operator[,] . . . the Legislature has authorized unlicensed employees to perform acts under specified conditions which would otherwise require a license." (*Varanelli* v. *Structural Pest Control Board* (1969) 1 Cal.App.3d 217, 219 [81 Cal.Rptr. 492].)[4] ■ Canterbury does not deny that the conduct of its unlicensed telephone personnel constituted the practice of structural pest control as contemplated by section 8550, subdivision (a), but asserts that such conduct comes within a statutory exception to the general rule of licensure. We disagree.

In support of its argument, Canterbury relies on section 8506.1, which provides, in relevant part: "A registered company may secure structural pest control work, identify infestations or infections, make inspections, submit bids or otherwise contract for pest control work. A registered company may hire licensed field representatives and licensed operators to represent the company in the securing of pest control work. A registered company may hire or employ individuals who are not licensed under this chapter to perform work on contracts covering wood-destroying organisms only after

---

[4]Structural pest control licenses are issued by Board to individuals as either "operators" (§ 8506, subd. (a)) or "field representatives" (§ 8507, subd. (a)). An entity registered with Board to engage in structural pest control is known as a "registered company." (§ 8506.1.) For purposes of this opinion, there is no pertinent distinction between an operator, field representative, or registered company.

an operator or field representative has fully completed the negotiation or signing of the contract covering a given job."

Canterbury asserts, "Section 8506[.1] expressly states that a licensed signing or negotiation of a contract is a prerequisite *only* for unlicensed employees to provide service *on contracts covering [Branch 3] wood destroying organisms.* Contracts in Branch 2 which do not cover wood destroying organisms do not require a prior negotiating or signing of a contract by a licensed individual." (Original italics.)

This assertion is a non sequitur. Neither law nor logic permits a leap from section 8506.1's reference to unlicensed individuals performing work on termite contracts to the conduct of Canterbury's unlicensed telephone personnel in negotiating or securing contracts for control of household pests. Section 8506.1 affirmatively permits licensees to contract for structural pest control work and allows unlicensed persons to perform termite work only as part of such a contract. The statute does not, either directly or by implication, permit unlicensed persons to contract for pest control work.

Nor is Canterbury aided by section 8515, which provides: "Nothing in this chapter shall prohibit a company registered hereunder from authorizing an officer, partner, or employee[5] to submit bids, after an inspection by an individual licensed under this act, or to sign contracts after negotiation by an individual licensed under this act, on behalf of the registered company." Again, simply because no license is needed to submit bids or sign contracts *after* inspection or negotiation by a licensee, it does not follow that unlicensed persons may negotiate or secure pest control contracts in the absence of prior inspection or contract negotiation by licensed personnel. Indeed, the contrary appears to be true.

Canterbury also mistakenly relies on dictum in an opinion by the Attorney General (27 Ops.Cal.Atty.Gen. 178, 180 (1956)), which states that "a person, licensed neither as an operator nor as a field representative, may not play any *major* role in securing or negotiating pest control work or a contract therefor." (Italics added.) Although Canterbury insists the conduct of its telephone personnel is permitted because it is not "major," the quoted language is taken out of context. The Attorney General's opinion ultimately concludes that unlicensed persons may not "solicit" pest control work, and it is thus of no assistance to Canterbury.

As none of the exceptions to the general rule of licensure permit unlicensed personnel to negotiate or secure contracts for the control of house-

---

[5] An "employee" is not necessarily licensed to practice structural pest control. (See § 8512.)

hold pests, we conclude that such conduct by Canterbury violated structural pest control laws.

## 2. *Household Pest Control Work Performed Without Prior Inspection*

 Board also found Canterbury to have violated structural pest control laws by allowing its applicators to perform branch 2 pest control work without prior inspection of the premises by a structural pest control licensee. We find this holding to be erroneous.

Canterbury contends that there is no specific rule requiring an inspection prior to the performance of branch 2 pest control work by a licensed applicator. Board, on the other hand, takes the position that such a rule is embodied in section 8514.

Section 8514 provides, in relevant part: "Notwithstanding any provision of this chapter, after an inspection has been made a registered company which hold a branch registration for the control of household pests, or wood destroying pests or organisms, but its branch registration restricts the method of eradication or control permitted, may recommend and enter into a contract for the eradication or control of pests within the scope of its branch registration, provided it subcontracts in writing the actual performance of the work to a registered company which holds a branch registration authorizing the particular method to be used."

Board acknowledges that this statute does not specifically support its position, but nonetheless argues that if branch 2 work were permitted without a prior inspection, "the statute would permit companies to perform branch 2 work without the necessity of employing licensed branch 2 operators or field representatives who are considered the only persons qualified to perform and supervise structural pest work," and that "such a result [would] defeat[ ] the manifest purpose of the [structural pest control] laws . . . [making] licensure in branch 2 meaningless."

Board's assertion is devoid of merit. A restricted company's ability to contract with another company for the performance of work when inspection determines that the restricted company is unable to provide the required services has no bearing whatsoever on the question of whether a branch 2 licensee may perform pest control work without a prior inspection.

Moreover, Board fails to mention section 8516, subdivision (b), which provides that "[n]o registered company shall commence work on a contract,

or sign, issue or deliver any documents expressing an opinion or statement relating to the absence or presence of wood-destroying [branch 3] pests or organisms until an inspection has been made." As no parallel provision exists with respect to branch 2 pest control work, the implication is clear that prior inspection is not required. (See *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881-882, fn. 4 [221 Cal.Rptr. 509, 710 P.2d 309].)

Since all structural pest control work provided by Canterbury was performed by properly licensed applicators and we are unable to find any requirement that a premises be inspected before the performance of branch 2 pest control work by a licensed applicator, we conclude that Board's contrary finding was unsupported in law.

## DISPOSITION

The judgment is affirmed to the extent it upholds the finding that Canterbury Termite Control, Inc., violated or aided and abetted the violation of structural pest control laws by allowing unlicensed personnel to make arrangements for the performance of household pest control work. The judgment is reversed to the extent it upholds the finding that Canterbury Termite Control, Inc., violated or aided and abetted the violation of structural pest control laws by performing household pest control work without a prior inspection of the premises. The superior court is directed to issue a writ of mandate compelling the Structural Pest Control Board to strike the improper finding and to reconsider the question of appropriate discipline to be imposed in light of this disposition. The parties are to bear their own costs on appeal.

Spencer, P. J., and Hanson (Thaxton), J., concurred.