[No. F013188. Fifth Dist. Feb. 19, 1991.]

PESTMASTER SERVICES, INC., et al., Plaintiffs and Respondents,
v.
STRUCTURAL PEST CONTROL BOARD etc., Defendant and Appellant.

904

COUNSEL

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Joel S. Primes and Constance M. Barton, Deputy Attorneys General, for Defendant and Appellant.

Michael J. Matteucci for Plaintiffs and Respondents.

OPINION

**THAXTER, J.**—May a licensed pest control operator, relying solely on the inspection report of another licensed operator and without conducting its own inspection, perform repair work recommended in the report? Appellant Structural Pest Control Board (Board) answered this question no. The trial court disagreed and issued a peremptory writ of mandate directed to the Board. We agree with the Board and will reverse the trial court's judgment.

BACKGROUND

Pestmaster Services, Inc., is a pest control company owned by respondent Jeffrey Van Diepen. Both Van Diepen and Pestmaster procured and retain licenses issued by the Board pursuant to the authority granted under the Structural Pest Control Act (Act).[1]

A licensed employee of Pestmaster, Darrell Voortman, performed corrective work on two residences in the course of his employment. The work performed was recommended by licensed pest control companies other than Pestmaster in standard structural pest control reports prepared after each conducted pest control inspections of the residences. Voortman issued a completion notice (in accordance with § 8518) and a certification of termite clearance (in accordance with § 8519) without first preparing a standard inspection report of his own. According to the Board this violates the statutory requirement that a pest control company do an inspection before performing corrective work on property and before issuing a notice of completion and termite clearance.

One of the properties on which Voortman performed recommended corrective work is located at 1611 Oklahoma Street, Escalon. E.T.'s

---

[1] Business and Professions Code section 8500 et seq. All statutory references are to the Business and Professions Code unless otherwise indicated.

Guaranteed, Inc., a licensed pest control company, inspected the property for pest damage and issued an initial standard structural pest control inspection report, dated January 24, 1986, identifying certain pest-related problems and recommending needed corrective work. Pestmaster, relying on the Guaranteed report, removed some cellulose debris and chemically treated the building's subarea as recommended by Guaranteed. Pestmaster issued a notice of work completed and not completed on February 12, 1986, pursuant to section 8518. The notice included a certification by Pestmaster, pursuant to section 8519, that "no evidence of active pest infestation or infection was found in visible and accessible portions of the structure." The notice referred to Guaranteed's inspection report by number, date, and registration stamp number. Pestmaster did not conduct its own inspection. The notice was filed with the Board as required by section 8518.

Pestmaster followed the same procedure with respect to work performed at 504 Hamden Lane, Modesto, relying on the standard structural pest control inspection report completed by D & D Pest Control, also a licensed company. The D & D report, dated December 16, 1985, made numerous findings and recommendations for corrections on the property. Pestmaster completed some of the recommended work, issued the notice of work completed and not completed on May 21, 1986, and certified the property free of termite problems without performing a standard inspection of its own.

After an investigation in which Voortman admitted he had relied on the initial reports prepared by Guaranteed and D & D, the Board issued a notice of accusation, later amended, against Van Diepen and Pestmaster charging numerous violations of the Act. The only accusation relevant to the appeal is the alleged violation of section 8516, subdivision (b).

The matter was heard before an administrative law judge who found violations of section 8516, subdivision (b) and ordered discipline of Pestmaster and Van Diepen. The Board did not adopt the administrative law judge's decision. The Board issued its own decision in which it slightly modified the administrative law judge's findings and disciplinary order. The relevant part of the decision determined that Pestmaster violated section 8516, subdivision (b) with respect to both properties.

The Board ordered the licenses of both Van Diepen and Pestmaster suspended 36 days, to be stayed during a 3-year probation period, conditioned on an actual 10-day suspension or a $1,000 penalty in lieu of the suspension on each property. In addition, Pestmaster was ordered to reimburse the Board for one random inspection per quarter, not to exceed $125 per inspection. Van Diepen was ordered to complete a correspondence

course in pest control, branch 3 (wood destroying pests and organisms, repairs and corrections) offered by the University of California Extension. The Board upheld its decision after reconsideration at its October 22, 1988, meeting and the decision's new effective date was designated November 27, 1988.

Pestmaster and Van Diepen filed a petition for writ of mandate and request for stay on November 23, 1988. The court stayed the order, except for the inspection provision. The matter was heard on February 10, 1989. On March 7, 1989, the court filed its tentative decision rejecting the Board's interpretation of section 8516, subdivision (b), but upholding that part of the Board's decision finding violations of other sections. The court remanded the matter to the Board for reevaluation of the penalty imposed. A statement of decision was filed on April 26, 1989. Judgment was entered and a peremptory writ of mandate issued on June 15, 1989.

This appeal followed.

## CONTENTIONS

The Board contends the trial court failed to interpret correctly the requirements of section 8516 and failed to read the statutory scheme as a whole. According to the Board the statutory scheme impliedly, if not expressly, requires that a licensee performing corrective work conduct its own inspection of the property without relying on an inspection report prepared by another licensed operator. Pestmaster contends that the statute does not impose such a requirement.

The issue is one of first impression. None of the cases cited by the parties are directly on point.

There is no contention that the inspections performed by Guaranteed and D & D were inaccurate or incomplete. Nor is it contended that the work completed by Pestmaster was substandard.

## DISCUSSION

### 1. *Standard of Review*

Because the evidence is undisputed and the issue raised a question of law, the appellate court's function is identical to that of the trial court and the trial court's legal conclusions are not binding on appeal. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915-916 [80 Cal.Rptr.

89, 458 P.2d 33]; *Canterbury Termite Control, Inc.* v. *Structural Pest Control Bd.* (1989) 207 Cal.App.3d 422, 426 [254 Cal.Rptr. 873]; *Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 387 [146 Cal.Rptr. 892].) We must review the legal question presented de novo. (*Los Angeles County Safety Police Assn.* v. *County of Los Angeles* (1987) 192 Cal.App.3d 1378, 1384 [237 Cal.Rptr. 920]; *Muffett* v. *Royster* (1983) 147 Cal.App.3d 289, 300 [195 Cal.Rptr. 73].)

## 2. *Statutory Construction Criteria*

■ "In construing the applicable provisions of California's structural pest control laws, we are bound by the doctrine that 'our first task . . . is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.] A statute should be construed whenever possible so as to preserve its constitutionality. [Citations.]' (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)" (*Canterbury Termite Control, Inc.* v. *Structural Pest Control Bd.*, *supra*, 207 Cal.App.3d 422 at p. 426, fn. omitted.)

■ Although the final meaning of a statute rests with the courts, construction of a statute by the administrative agency charged with its enforcement, while not controlling, is entitled to great weight. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1388-1389 [241 Cal.Rptr. 67, 743 P.2d 1323].)

## 3. *The Statutory Scheme*

The state has undertaken an elaborate statutory design for the regulation of structural pest control operators. Operators must be licensed by the state and their methods of operation are regulated. (§ 8500 et seq.) Those seeking licensure under the Act must be qualified in the use and understanding of

poisonous and other chemicals used in pest control as well as in the theory and practice of pest control. (§ 8566, subds. (c) and (d).) Those licensed as operators are subject to discipline by the Board for noncompliance with the statute and the governing regulations. (§ 8610 et seq.)[2] ■ It is important that pest control businesses comply with the statute and supporting regulations because of the serious danger to property posed in California by wood-destroying pests and organisms. Termite clearance is an important aspect of any real estate transaction. (*Thole* v. *Structural Pest Control Bd.* (1974) 42 Cal.App.3d 732, 739 [117 Cal.Rptr. 206]; *Imperial Termite Control, Inc.* v. *Structural Pest Control Bd.* (1969) 275 Cal.App.2d 685, 689 [80 Cal.Rptr. 156].) The legislative intent is most certainly to protect the public which necessarily relies on the expertise of companies engaged in the business of structural pest control. Ensuring that property owners are fully informed with respect to the services rendered by registered companies is without a doubt a primary purpose of the Act's reporting requirements. (See Stats. 1988, ch. 1184, § 1, No. 4 Deering's Adv. Legis. Service, p. 4244.)

At the time of the conduct on which this proceeding is based, section 8516 provided in pertinent part as follows:[3]

"(b) No licensee shall commence work on a contract, or sign, issue or deliver any documents expressing an opinion or statement relating to the absence or presence of wood-destroying pests or organisms until an inspection has been made. The licensee shall retain for three years all field reports from which a verbal or written estimate of or solutions for work are made. A written inspection report conforming to this section and on a form prescribed by the board shall be prepared and delivered to the person requesting the inspection or to the person's designated agent. A copy of each report shall be filed with the board at the time the report is delivered or not later than five working days after the date the inspection is made. The report shall be delivered to the person requesting the inspection, or to the person's designated agent, before work is commenced. The following shall be set forth in the report:

---

[2] Section 8641, the statute upon which the Board relies for its authority to discipline Pestmaster and Van Diepen, provides as follows:

"Failure to comply with the provisions of this chapter, or any rule or regulation adopted by the board, or the furnishing of a report of inspection without the making of a bona fide inspection of the premises for wood-destroying pests or organisms, is a ground for disciplinary action."

[3] Amendments to several sections of the Act, including section 8516, became effective after Pestmaster's alleged violations occurred. (Stats. 1985, ch. 1348, § 21, p. 4763; Stats. 1986, ch. 1266, p. 4422 et seq.; Stats. 1988, ch. 1184, *supra*.) Pestmaster is entitled to the benefit of mitigating amendments taking effect before the Board's decision became final. (*Weissbuch* v. *Board of Medical Examiners* (1974) 41 Cal.App.3d 924, 929 [116 Cal.Rptr. 479].) None of the post-1986 amendments, however, appear relevant to the issues in this case.

"1. The date of the inspection and the name of the person making the inspection.

"2. The name and address of the person or firm ordering the report.

"3. The name and address of any person who is a party in interest to whom the board is to send certified copies of inspection reports and completion notices as provided in subdivision (e).

"4. The address or location of the property.

"5. A general description of the building or premises inspected.

"6. A foundation diagram or sketch of the structure . . . indicating thereon the approximate location of any infested or infected areas . . . .

"7. Information regarding the substructure, foundation walls and footings, porches, patios and steps, air vents, abutments, attic spaces or other parts subject to attack by wood-destroying pests or organisms . . . .

"8. Indication or description of any areas normally subject to damage which are inaccessible or for other reason not inspected, . . .

"9. Recommendations for corrective measures.

"10. The inspection report shall clearly disclose that if requested by the person ordering the original report, a reinspection of the structure will be performed if an estimate or bid for making repairs was given with the original inspection report, or thereafter.

". . . . . . . . . . . . . . . . . . . .

"A reinspection shall be an inspection of those items previously listed on an original report to determine if the recommendations have been completed . . . .

"After four months from an original inspection, all inspections shall be original inspections and not reinspections."

Section 8517 provides that:

"Any work contract, billing, agreement, letter of work completed, or other correspondence or document expressing an opinion or making a

statement relating to the presence or absence of wood destroying pests or organisms, . . . shall refer to the inspection report required by Section 8516, . . . Such documents shall indicate specifically whether all of the recommended work as set forth in the inspection report was completed, or, if not, it shall indicate specifically which recommendations were not completed."

In pertinent part section 8518 provided:

"When a licensee completes work under a contract, he shall . . . thereafter file with the board a notice of work completed, on a form prescribed by the board . . . ."

Section 8519 read:

"Certification as used in this section means a written statement by the licensee attesting to the statement contained therein relating to the absence or presence of wood-destroying pests or organisms and, listing such recommendations, if any, which appear on an inspection report prepared pursuant to Section 8516, and which relate to (1) infestation or infection of wood destroying pests or organisms found, or (2) repair of structurally weakened members caused by such infestation or infection, and which recommendations have not been completed at the time of certification.

"Any licensee who makes an inspection report pursuant to Section 8516, shall, if requested by the person ordering such inspection report, prepare and deliver to such person or his designated agent, a certification, to provide:

"(a) When the inspection report prepared pursuant to Section 8516 has disclosed no infestation or infection: 'This is to certify that the above property was inspected on _____ (date) in accordance with the Structural Pest Control Act and rules and regulations adopted pursuant thereto, and that no evidence of active infestation or infection was found.'

"(b) When the inspection report prepared pursuant to Section 8516 discloses infestation or infection and the notice of work completed prepared pursuant to Section 8518 indicates that all recommendations to remove that infestation or infection and to repair damage caused by that infestation or infection have been completed: 'This is to certify that the property described herein is now free of evidence of active infestation or infection.'

"(c) When the inspection report prepared pursuant to Section 8516 discloses infestation or infection and the notice of work completed prepared

pursuant to Section 8518 indicates that the licensee has not completed all recommendations to remove that infestation or infection or to repair damage caused by it: 'This is to certify that the property described herein is now free of evidence of active infestation or infection except as follows: _____ (describing infestations, infections, damage or evidence thereof, excepted).'

"Such certificate shall be accompanied by a copy of the inspection report prepared pursuant to Section 8516, and by a copy of the notice of work completed prepared pursuant to Section 8518, if any such notice has been prepared at the time of the certification, or such certification may be endorsed on and made a part of that inspection report or notice of work completed."

Pestmaster focuses on that portion of section 8516, subdivision (b) which states that "[n]o licensee shall commence work on a contract . . . until an inspection has been made." Pestmaster argues that because an inspection had been made on each of the properties involved here before Pestmaster commenced its repair work, the statute was not violated notwithstanding that the inspection had been performed by another pest control company. According to Pestmaster this provision is unambiguous and requires no interpretation. Pestmaster further argues that reference to other sections of the Act is unnecessary.

We do not view the issue as narrowly as Pestmaster urges. If section 8516, subdivision (b) stated that "no licensee shall commence work on a contract . . . until an inspection is made *by any licensee*," the legislative intent would be clear without question and no interpretation would be necessary. ■ But the Legislature has not spoken so explicitly. The statutory language is reasonably susceptible of the meaning attributed to it by the Board (i.e., that the inspection must have been conducted by the licensee performing the repair work). We can determine the correct meaning of the statutory language used in section 8516, subdivision (b) only by considering that subsection's provisions in light of other sections of the comprehensive Act of which it is a part. (*Canterbury Termite Control, Inc.* v. *Structural Pest Control Bd.*, *supra*, 207 Cal.App.3d 422 at p. 426.)

4. *Analysis of Statutory Provisions*

■ Pestmaster contends that because it was charged only with commencing repair work in violation of section 8516, subdivision (b), the provisions of sections 8518 and 8519 are irrelevant. We disagree.

In general, section 8516 deals with inspections and inspection reports, section 8518 deals with notices of completion of corrective work, and section 8519 deals with termite certifications contained in either an inspection report or a notice of completion. Section 8519 expressly refers to both sections 8516 and 8518. The three sections are inextricably linked and should be read together.

The first sentence of section 8516, subdivision (b) contains a dual prohibition. A licensee may not commence work *or* give a termite certification until an inspection is made. The first amended accusation filed with the Board alleged that Pestmaster commenced corrective work without inspecting the properties. Certainly the charges against Pestmaster cannot be expanded to include the improper issuance of termite certifications. It does not follow, however, that reference to other statutory provisions dealing with certification is improper if they illuminate the Legislature's intent.

Nothing in the statutory language suggests that the inspection requirement for the commencement of work differs in any way from the inspection requirement for issuance of a termite certification. Because the Legislature chose to condition both the commencement of work and the issuance of a certification with the same words in the same sentence, the meaning given to the condition should be the same for each activity. For example, the language does not reasonably lend itself to an interpretation that work may commence upon inspection by another licensee while certification may be made only after inspection by the certifying licensee. If other sections of the Act give meaning to the condition as it applies to certification, that meaning should also attach to the condition for commencement of work.

The language of section 8519 clearly evinces a legislative intent to require that a licensee conduct its own inspection before issuing a termite certification. We draw that meaning from the provision that "[a]ny licensee *who makes an inspection report pursuant to Section 8516*, shall . . . prepare and deliver . . . a certification . . . ." (§ 8519, italics added.) We find no parallel statutory provision authorizing a licensee to issue a certification without making an inspection report. Insofar as the Legislature has spoken, it has authorized (indeed, mandated) certifications only by licensees who have made inspection reports.

In addition, the statutorily dictated language of the certification implies that the licensee making the certification has personal knowledge of the fact stated. In cases such as this the certification is required to state: "This is to certify that the property described herein is now free of evidence of active infestation or infection." If company B has not inspected the property but

has merely performed corrective work recommended in the inspection report of company A, company B cannot truthfully certify that the property is termite-free. If the Legislature intended to authorize company B's certification without a new inspection, we believe it would have prescribed different language clearly indicating that company B had not inspected the property and was relying on company A's inspection.

The legislative purpose in requiring inspection by a licensee issuing a termite clearance certificate is self-evident. The public, including property owners, buyers, mortgage lenders, escrow agents, and title insurers, rely on such certificates before transferring title or disbursing loan or sale proceeds. The Legislature could reasonably conclude that a certificate issued by a company which has not conducted its own inspection is less reliable than one made by an inspecting company.

The reason for requiring inspection by a licensee before it commences corrective work is not as clear. We suppose the Legislature could have reasonably authorized a licensee to commence corrective work based on the inspection report of another licensee. The Legislature, however, did not use statutory language distinguishing between the commencement of work and the issuance of a certification. Instead, it imposed the same condition on both. Our task is not to speculate on the reasons why the Legislature chose one design over another but to give effect to the one chosen.

We find further support for the Board's interpretation in section 8516, subdivision (b), itself. The subdivision provides for a reinspection, which is defined as "an inspection of those items previously listed on an original report to determine if the recommendations have been completed." Apparently, an original inspecting company performing recommended corrective work must file the reinspection report even though it may also be required to file the notice of completion under section 8518. If Pestmaster's contentions are upheld, however, in cases such as this a second company could issue a termite clearance even without an inspection by the second company or a reinspection by the first company. We see no reason why the Legislature would require reinspection when the corrective work is performed by the original inspecting company but not require it when a second company performs the repairs.[4]

---

[4] A reinspection may not be made more than four months after the original inspection. (§ 8516, subd. (b).) Pestmaster's corrective work on one of the properties involved here (the Hamden Lane property) was completed on May 21, 1986, although the original inspection report filed by D & D Pest Control was dated December 16, 1985. When Pestmaster completed its work, the time for reinspection had passed. No issue was raised with regard to this circumstance, either below or on appeal, and we merely note it in passing.

Pestmaster points out that under the Act corrective work recommended in an inspection report is not required to be performed by a structural pest control licensee. Instead, it may be performed by the property owner (§ 8555) or a licensed contractor (§ 8556), subject to certain limitations. Pestmaster seems to argue that because an owner or licensed contractor may commence corrective work relying on the inspection report of a structural pest control licensee, there is no reason why a second licensee may not likewise do so. The argument, however, ignores the fact that section 8516, subdivision (b) is expressly addressed to licensees.

There are very different consequences flowing from work performed by a licensee and that performed by a nonlicensee. Neither an owner nor a licensed contractor may file the notice of completion and certification provided for in sections 8518 and 8519. A licensee who performs the necessary repair work, however, must file the notice of completion which, if requested by the owner, must include the certification prescribed by section 8519. This difference between licensees and nonlicensees may explain why the Legislature would require licensees to conduct their own inspection before commencing work.

For these reasons we conclude that one licensee may not issue a certification on property it has not inspected, merely relying on the inspection report of another licensee. That conclusion supports the Board's interpretation of section 8516, subdivision (b) regarding the commencement of work by a licensee (i.e., the licensee performing the work must first conduct its own inspection). Because the Board's interpretation of the statute is reasonable and not clearly erroneous, courts should not depart therefrom. (*Anderson* v. *State Bd. of Chiropractic Examiners* (1970) 11 Cal.App.3d 963, 967 [90 Cal.Rptr. 152].) We further note that both licensed pest control operators testifying at the administrative hearing, including Pestmaster's owner, Van Diepen, clearly stated their understanding that a licensee performing repair work must perform its own inspection. That testimony is some evidence of custom and practice in the industry supporting the Board's interpretation.

Because Pestmaster commenced repair work without first inspecting the properties, the Board correctly found violations of section 8516, subdivision (b).

## DISPOSITION

The judgment is reversed with directions to enter a new judgment denying the petition for writ of mandate. Costs to appellant.

Martin, Acting P. J., and Dibiaso, J., concurred.